## ABRAHAM OETTINGER *v.* URIAH P. LEVY.

⟨here, by the terms of a lease, the tenant is bound to make the repairs, and keep the premises in good repair, &c., statements made by the landlord previous to the lease, that the premises were in good repair, will not sustain an action by the tenant for the value of repairs executed by him.

But where the landlord himself, after the lease, voluntarily makes alterations upon the premises, which alterations are defective, and on a threat of the tenant to bring an action against him, agreed that the tenant may make repairs, and that he, the landlord, will pay therefor; such agreement, although by parol, is valid.

In an action upon such an agreement, the tenant cannot recover for rent lost, for the reason, that under tenants left the premises in consequence of their condition, as caused or promoted by the defective repairs of the landlord.

REVIEW of a judgment recovered by the plaintiff. The case is particularly stated in the opinion.

*Asahel S. Levy*, for the defendant.

*Robert Gillen*, for the plaintiff.

BY THE COURT. INGRAHAM, FIRST J.—The plaintiff held, as assignee of Moses B. Oettinger, a lease from the defendant of certain premises on the First avenue, for three years and three months, at an annual rent of $1,200, from the 1st of February, 1853. Certain representations as to the condition of the premises were made before the execution of the lease. By the terms of the lease, the defendant was bound to make the repairs, and keep all the premises in good repair and tenantable condition. After the lessee went into possession, the sink and sewer pipes became defective. On 19th February, Moses B. Oettinger assigned the lease to the plaintiff. Upon the discovery of the defects in the pipes, application was made to the defendant to repair the same, by Moses, about the 1st of May, and he testifies that the defendant told him to repair the same, and promised to pay for it.

After this, the defendant caused some alterations in water closets and pipes to be made through one Goldsmith, which did not remedy the evil; and on 30th July, 1853, defendant told Moses that the plaintiff might repair the premises and he would pay for it. At the same time Moses B. Oettinger swears that the defendant agreed to reduce the rent to $1,000 per annum, which, by an endorsement on the lease, appears to have been done on 5th November, 1853, as signed by the defendant.

The work done by plaintiff is shown to have amounted to $145 94. It is also in proof, that the under tenants left the premises, and alleged as the reason for removing, the condition of the sink pipes. It was also proven, that the amount of rent lost from 1st May, 1853, to 1st May, 1854, was $225. The Marine Court rendered judgment for the plaintiff for $313 69.

The complaint is founded upon the alleged parol agreement of the defendant with the plaintiff, allowing him to repair the buildings.

Whatever representations, therefore, may have been made before the execution of the lease, can, in no event, form any foundation for this action, even if they could be given in evidence at all, if objected to. The defendant's objection on this ground, however, is immaterial, as it is evident that the justice rendered judgment upon the subsequent agreement, in July, 1853.

We are bound, by the finding of the justice, to hold that the parol agreement, as testified to by Moses B. Oettinger, was entered into between the plaintiff and the defendant on the 30th July, 1853. He swears to such an agreement, as made at that time, and the finding of the court below on that point is conclusive.

It is objected, however, that such agreement being by parol, was not binding, and could not alter or change the terms of the written lease between the parties, executed under seal.

That such effect could be produced by the parol agreement

must be conceded. The defendant, or his assignee, still remains bound.by his lease, and the covenants contained in it, to keep the premises in repair; but still I see no reason why a subsequent parol contract between the parties might not be made which would be binding upon them. Had the defendant abided by the conditions of the lease, he would have been under no obligations to do the repairs. Instead of doing so, however, he went upon the premises after the lease commenced, altered and removed the pipes, and introduced into the premises water closets. This, probably, was done with the assent of the tenant, and could form no ground of complaint on his part; but subsequently, on the failure of the new work, a threat of a law suit on the part of the tenant led to the promise which was the foundation of the action. This promise and agreement was not to relieve the plaintiff from his obligation to keep the premises in repair, but to pay for such repairs as were necessary to put in order the work which the defendant had previously put on the premises. It was an agreement, that if the plaintiff would do certain work on the premises, the defendant would pay for it.

For both reasons, viz., that it was to repair work done by the defendant since the lease, and that it did not alter the conditions of the lease, the contract was valid, and, having a sufficient consideration, may be enforced. The threatened law suit and desire on the part of defendant to avoid it, was sufficient to sustain such a promise.

But I think the justice erred in allowing any damages for loss of rent. The agreement sued on was the promise of the 30th July. By that promise and agreement, the plaintiff was to do the repairs and be paid by defendant. The evidence of loss of rent, if there was any such proof, was as to the tenants leaving before the 1st of July; and if the tenants left afterwards, it was the plaintiff's fault and not the defendant's, as the plaintiff had the authority to do the repairs as soon as he pleased. Whatever followed, from any delay on his part, was occasioned by his own default.

Besides, there was not sufficient evidence to show that any

loss of rent occurred from this cause. What a tenant said on leaving was no proper evidence, and the tenant had no right thus to leave the premises before the hiring had terminated. He still remained liable to the plaintiff for the period of his hiring. Nor was there any such special damage claimed in the complaint. For all these reasons loss of rent was improperly allowed by the justice.

The judgment should be affirmed for $145 94, and interest from 19th October, 1854—the date of the judgment—and reversed as to the residue, without costs.

Adjudged accordingly.